# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**THELL ROBINSON, III,**  CASE NO. 2:08-cv-00284
  CRIM. NO. 2:04-cr-00100
  **Petitioner,**  **JUDGE GRAHAM**
  **MAGISTRATE JUDGE KEMP**

v.

**UNITED STATES OF AMERICA,**

  **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant motion, respondent's return of writ and supplemental authority, petitioner's reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED**.

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> Columbus, Ohio police officers stopped the car in which Robinson was a passenger. The officers asked him to exit the vehicle and conducted a patdown, during which one officer discovered a Bryco Arms 9mm handgun in the waistband of Robinson's pants.
>
> At trial, the government introduced the testimony of Bureau of Alcohol, Tobacco and Firearms and Explosives (ATF) Special Agent David Hall for the purpose of showing the origin of the gun to prove the interstate commerce nexus element of the charge. Hall testified that he had examined between 50 and 100 Bryco firearms and that, to his knowledge, Bryco's current and

> previous manufacturing locations included Costa Mesa and Irvine, California, and Nevada. He testified that he knew of no other Bryco manufacturing facilities besides those in Nevada and California. He further testified that on the side of the Bryco firearm obtained from Robinson there was a stamp stating "Bryco Arms" and "Costa Mesa, California, U.S.A." Hall further explained that he conducts research on information for testimony utilizing records saved on compact discs maintained by the ATF. These records contain the addresses of firearms manufacturers, which they are required to provide to the ATF.

*United States v. Robinson*, 205 Fed.Appx. 415, 2006 WL 3311283 (6th Cir. November 14, 2006).

> Following a jury trial, Thell Robinson was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and was sentenced to 100 months in prison.

*See id.* Petitioner filed a timely appeal in which he asserted "that the evidence was insufficient to convict him of the charge.... the court should have stricken the testimony of the expert... [and] that the indictment failed to state an offense." *See id.* On November 14, 2006, the United States Court of Appeals for the Sixth Circuit affirmed petitioner's convictions. *Id.* On June 25, 2007, the United States Supreme Court denied petitioner's petition for a writ of *certiorari*. *Robinson v. United States*, 127 S.Ct. 3005 (2007); Doc. No. 41.

On March 24, 2008, petitioner filed the instant *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255. He asserts that he was denied the effective assistance of counsel because his attorney failed to file a motion to suppress evidence, failed to advise him of the ramifications of proceeding to trial, and failed to explain that petitioner would be unable to challenge the propriety of police search and seizure of his

firearm without filing a motion to suppress evidence. In support of his claims, petitioner has attached his own affidavit, as well as an affidavit from Farrar Richardson, petitioner's ex-wife, who was driving the car in which petitioner was seated as a passenger on the day of his arrest. Richardson indicates police stopped her for excessively tinted windows. Officer Pampas tested the level of tint on the windows and additional police arrived at the scene. Police had petitioner get out of the car and searched him. They found a firearm and placed him under arrest. Police advised Richardson that a drug dog brought to the scene had "hit" for drugs in the car, although no drugs were found. Police cited her for excessively tinted windows and allowed her to leave. Petitioner "constantly stated his desire to plead guilty but ... wanted his attorney to challenge the stop of the vehicle." Richardson additionally states:

> After the final pre-trial hearing prior to [petitioner's] trial, I approached Mr. Hobson... [who] stated that he did not want to discuss [petitioner's] case because he was upset with [petitioner] and that they were not talking.

*Affidavit of Farrar Richardson, Exhibits to Petition; Return of Writ.*

Petitioner also has attached an affidavit from Bryant Robinson. Robinson indicates that he was talking to petitioner over the telephone via petitioner's cell phone just prior to petitioner's arrest regarding petitioner's ex-wife and her weakened physical health due to chemotherapy treatment and the possibility of petitioner obtaining a transfer of his probation to Maryland so he could help take care of his four daughters. *See Affidavit of Bryant Robinson, Exhibit to Traverse.*

It is the position of the respondent that petitioner's claims are without merit.

**MERITS**

Petitioner asserts that he was denied the effective assistance of counsel prior to trial because his attorney failed to file a motion to suppress the firearm seized by police as obtained in violation of the Fourth Amendment and failed to explain to him that he would be unable to challenge admission of the firearm if he did not raise the issue prior to trial. Petitioner states he believed the legality of the search would be a valid defense at trial. *Memorandum in Support*, at 6. Petitioner further asserts that he would have pleaded guilty had his attorney advised him that he would be unable to challenge the search and seizure at trial, and had his attorney properly explained the sentencing ramifications of proceeding to trial.

In response to petitioner's allegations, respondent has provided an affidavit from defense counsel Gordon G. Hobson, with the Federal Public Defender's Office, which indicates in relevant part as follows:

> I did not file a motion to suppress in Mr. Robinson's case because I believed such motion to be without merit. Mr. Robinson did not disagree with the facts as stated in the C.D. report. These facts can be summarized as follows: The vehicle was stopped by Columbus Police Officers McLean and Pampas because the windows were tinted in excess of the amount permitted by law. The C.D. report stated that "the vehicle had very dark tinted windows, obviously below the required 50%". The vehicle was driven by Farrar Richardson, and Mr. Robinson was the front seat passenger. Robinson was not wearing his seat belt and "was visibly upset and nervous to the point of having tears come down his face."

4

The officers had recently received information concerning Robinson being involved in possible narcotics trafficking from another law enforcement official. The officers checked Robinson's record and discovered prior arrests for weapons and homicide.FN1.

FN1: Robinson had been released from prison approximately three months earlier after serving a sentence for involuntary manslaughter with specification, and aggravated robbery. Robinson had also been convicted of felony drug abuse, batter, carrying a concealed weapon, and unauthorized use of a motor vehicle.

The officers then requested a canine. The canine alerted to the vehicle for the presence of narcotics. At this point, Ms. Richardson was asked to exit the vehicle with a small child who was in the back seat.

Officer McLean approached Robinson and asked him to get out of the vehicle. During a Terry pat down, a loaded Bryco Arm, Jennings 9 mm was recovered from Robinson's waist band.

I believe that the search was legal under the Fourth Amendment. The officers observed a traffic violation and therefore had probable cause to stop the vehicle. I discussed this matter with Farrar Richardson. She acknowledged that the windows were illegally tinted. She sated that the car was from Florida and that the tint was legal in Florida. She did not contradict the information in the C.D. report. It does not matter whether the stop was a pretextual *Whren v. United States*, 517 U.S. 806 (1996). Once the police lawfully stopped the vehicle, they had the authority to order the passengers out of the vehicle. *Maryland v. Wilson*, 519 U.S. 408 (1997).

It should be noted that the officers also had authority to arrest Robinson because of the seatbelt violation. *Atwater v. City of Lao Vista*, 532 U.S. 318 (2001) (4th Amendment does not forbid a warrantees arrest for a minor criminal offense such as

seatbelt violation punishable only by a fine).

Once a dog alerts to a vehicle, the police have probable cause to conduct a warrantless search of the vehicle. *United States v. Bloomfield*, 40 F.3d 910 (8th Cir. 1994); *United States v. Klinginsmith*, 25 F.3d 1507 (10th Cir. 1994). I asked Ms. Richardson how long they waited until the dog arrived and she stated 10 minutes. There was no unreasonable delay in procuring the canine.

I think a *Terry* patdown was justified in this case based upon Robinson's unusual behavior, his prior record, the officer's recently acquired information about Robinson's drug trafficking, the positive canine alert as well as the fact that Robinson was not wearing a seatbelt, and was subject to search incident to his arrest. The fact that the vehicle had tinted windows is itself a factor that weighs against Robinson's 4th Amendment claim. *United States v. Stanfield*, 109 F.3d 976 (4th Cir. 1997).

Plea Negotiations

Robinson was indicted for being a felon in possession of a firearm. He entered a not guilty plea on July 22, 2004, and the trial was set for September 13, 2004. I filed the standard demands for discovery and reviewed the case. I concluded that the case was really not triable from Mr. Robinson's perspective. I met with him and reviewed the evidence against him. I explained to Mr. Robinson how the government would establish his prior record through fingerprints. I explained to him the law of possession and I explained to him interstate nexus.

I advised Robinson that his guideline range would be 77-96 months based upon a guilty plea but would be 100-120 months if he was convicted at trial, because he would lose the reduction for acceptance of responsibility. I also discussed with Mr. Robinson the possibility of cooperating with the

6

government to earn a reduction pursuant to USSG §5K1.1.

Robinson wrote me a letter dated August17, 2004, in which he expressed an interest in cooperating with the government on his terms in return for a dismissal of the indictment....

I obtained a proposed plea agreement from AUSA Marous and I presented the plea to Mr. Robinson.... Robinson refused to sign the plea agreement. He stated to me that the plea was "not a deal" since the charge was not being reduced.

In our ensuing discussions, Mr. Robinson felt that his guidelines should be lower and he put forth various theories as to why he should receive a lower sentence. One area of dispute was Robinson's contention that he could earn a larger reduction for acceptance of responsibility. On August 27, 2004, I addressed this issue to Mr. Robinson by letter.... I also filed a motion to continue the trial so that Robinson could retain new counsel.

On September 3, 2004, the Court held a hearing on Robinson's request for new counsel. Prior to that hearing and during that hearing, Robinson always stated that it was his desire to plead guilty, but that he simply wanted to negotiate a better deal. The Court denied the motion to continue and also declined to appoint Robinson new counsel.

I went to FCCI to visit Robinson on September 6 or September 7, 2004. During that visit, Robinson for the first time insisted that he was going to go to trial. Robinson further indicated that he did not wish to talk to me further about this situation.

On September 7, 2004, I wrote a letter to Robinson confirming our conversation and providing him with all information relative to his case....

Sometime after the trial, Robinson apologized to me for going

>     to trial in this case.

*Affidavit of Gordon G. Hobson, Attachments to Return of Writ.*

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.,* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to

demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

In order to establish the ineffective assistance of counsel based upon counsel's failure to file a motion to suppress evidence, petitioner must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability the verdict would have been different but for admission of the illegally obtained evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Petitioner cannot meet this standard here.

Police had probable cause or reasonable suspicion to stop the vehicle in which petitioner was a passenger, believing that the car violated Ohio law prohibiting excessive window tinting.[1] *See United States v. Moreno*, 43 Fed.Appx. 760, unpublished, 2002 WL 1752273 (6th Cir. July 26, 2002), citing *When v. United States*, 517 U.S. 806, 811-13 (1996)(stop of motor vehicle authorized by reasonable suspicion of police that windows may have violated tint ordinance); *United States v. Yandal*, 2008 WL 4909097 (W.D. Ky. November 13, 2008)(same); *United States v. Zetouna*, 2005 WL 2334279 (E.D. Michigan September 22, 2005)(same). Further, the circumstances leading police to conduct a pat down of petitioner's person appears to have been constitutionally permissible. *See United States v. Branch*, 537 F.3d 582 (6th Cir. 2008)(pat down of defendant reasonable after dog alerted to scent of narcotics), citing *United States v. Jacob*, 377 F.3d 573, 579 (6th Cir. 2004); *United States v. Slater*, 209 Fed.Appx. 489, unpublished, 2006 WL 3779428 (6th Cir. December 22,

---

[1] See O.R.C. §4513.241.

2006)(police had probable cause to search trunk of car after alert of drug-sniffing dog), citing *Illinois v. Caballes*, 543 U.S. 405 (2005); *Atwater v. City of Lao Vista*, 532 U.S. 318, 354 (2001)("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.") Further, as noted by respondent, petitioner later admitted to police that he was in possession of a firearm while being a convicted felon. Trial Transcript, at 67-68.

The record likewise fails to support petitioner's claim that his attorney acted in a constitutionally unreasonable manner, or that petitioner was prejudiced thereby, in advising petitioner about sentencing ramifications, or in failing to persuade petitioner to enter a guilty plea.

> Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985). The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington,* 466 U.S. 668 (1984), applies to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill,* 474 U.S. at 58. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer,* 263 F.3d 542, 547-48 (6th Cir.2001) (citing *Turner v. Tennessee,* 858 F.2d 1201, 1206 (6th Cir.1988)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

*Humphress v. United States,* 398 F.3d 855, 859 (6th Cir.2005).

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Id.*, at 553, citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992).

> The decision to plead guilty-first, last, and always-rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Id.*

Petitioner states that he met Attorney Hobson after his initial hearing, at which time petitioner advised his attorney he wanted to challenge the search and seizure of the firearm. *Affidavit of Thell Robinson, III, Exhibits to Petition.*

> During the second meeting with Mr. Hobson, he stated that the government had offered a plea agreement that would carry approximately a term of imprisonment from 77-96 months. I asked about arguing the traffic stop in a motion to suppress. Mr. Hobson stated that he decided against filing the motion to suppress based on the traffic stop. I became upset that my attorney was not going to argue the legality of the stop and the

11

> conflict between the proposed plea agreement and the possible sentence of the state charges. The meeting ended without Mr. Hobson explaining the reasons (e.g., United States Sentencing Guidelines) governing the possible sentence pursuant to the federal count and the disparity between the state and federal sentencing procedures.
>
> [A]fter the second meeting, I did not have any future conversations with Mr. Hobson until the beginning of the trial.
>
> I would have accepted the plea agreement had Mr. Hobson filed a motion to suppress and it was denied and/or had Mr. Hobson explaining [sic] how the United States Sentencing Guidelines worked and how it affected the plea agreement and sentencing.

*Id.*

Petitioner initially expressed interest in negotiating a guilty plea. *See Exhibit A to Return of Writ* (i.e., a letter from petitioner to Attorney Hobson, dated August 17, 2004, in which petitioner indicates that he will "get whoever" the government wants "in exchange for this case to go away" and will work for "them in exchange for my case to disappear.") *See Exhibit A to Return of Writ.* However, in a letter dated August 27, 2004, Attorney Hobson advised petitioner he had requested a continuance of the trial date, indicating that the attorney client relationship had "deteriorated.." *Exhibit C to Return of Writ.* Hobson's letter to petitioner indicates that Hobson had discussed sentencing ramifications with petitioner. Hobson stated:

> Allow me to clear up one point. You had raised an issue about a guideline reduction for super acceptance of responsibility and self-surrender and I advised you that there was nothing in

the guidelines to support that reduction. You then stated that this information came from the Federal Prison Guidebook by Alan Ellis. Knowing this to be an excellent book I though that you had probably misinterpreted the book and I asked that you call me so that we could review that part of the book together. Yesterday you presented me with the quote.

"Additionally, a self-surrender previously earned a male defendant a reduction of six points from his security point total, now it only earns a three-point reduction."

If you will take the time to review the book, you see that the quote is from p. 15 in the Chapter entitled "Securing a Favorable Federal Prison Placement". The BOP uses a scoring system to determine whether a person is designated to a high, medium, low or minimum security designation. This scoring is separate and apart from the federal sentencing guidelines. A reduction for self-surrender under the BOP scoring system has nothing to do with the guidelines score. I hope this explanation helps to clear up this misunderstanding.

I remain willing to discuss your case with you further if you desire.

*See id.* The request to continue the trial date, filed on that same date, indicates:

The parties have completed discovery and discussed resolving this matter by a plea agreement.

Mr. Robinson has indicated to counsel that he lacks confidence in counsel's ability and knowledge of the sentencing guidelines. Consequently, it has become most difficult for counsel and Mr. Robinson to work cooperatively on his case.

Mr. Robinson wants to hire an attorney to independently review the plea agreement prior to signing. Accordingly, it is requested that this case be continued for at least thirty days to

> permit Mr. Robinson the opportunity to retain counsel.

*Motion to Continue Trial Date*, at 21. On September 3, 2004, the Court held a hearing on petitioner's motion. The transcript of that hearing indicates in relevant part:

> COURT: I would like to know, Mr. Robinson, what problems you're having with Mr. Hobson. I don't understand why you would be having any problems with him.
>
> DEFENDANT ROBINSON: Because of the things that I was told I would qualify for, like downward departure because of my family situation, and he was saying that I wouldn't qualify for that because my kids are out-of-state, me and my wife, former wife, was both, but I came up here to go to school.
>
> There was just a lot of things.
>
> COURT: Well, sounds like Mr. Hobson was giving you his advice on whether a request for a downward departure on those grounds would be likely to succeed. I doubt that he was telling you he wouldn't do it if you wanted him to.
>
> Mr. Hobson?
>
> MR. HOBSON: That's correct, Your Honor. I disagree with Mr. Robinson in the sense that I indicated to him that a departure for extraordinary family circumstances is a ground that is occasionally raised and occasionally granted in the court, that.. would be a matter that would be up to the Court to determine at the time rather than myself... that there were some extraordinary issues in this case, and that would be a motion that we could make on his behalf. And I think we had a general discussion of the issue, but it's obviously an issue for the Court to decide.

> COURT: Any other problems, Mr. Robinson?
>
> DEFENDANT ROBINSON: I asked him for... a motion for consideration for house arrest. He said –
>
> COURT: And he's filed a motion on your behalf asking me to reconsider the detention order. And that's the next thing that I want to consider in your case....
>
> Anything else?
>
> DEFENDANT ROBINSON: No... I just got a serious situation on my hands. I just got my divorce yesterday from my former wife... I'm just trying to get the best counsel that is possible. I'm not trying to take this case to trial.

*Transcript,* September 3, 2004, at 3-5. A subsequent letter written by Attorney Hobson, dated September 7, 2004, indicates that on that date petitioner told Hobson he wanted to go to trial and did not wish to meet any further to discuss his case. Hobson enclosed an "NCIC" printout, as well as a complete copy of the discovery for petitioner's review, and stated:

> Should you change your mind and wish to discuss your case, give me a call. Otherwise, I will see you on September 13.

*Exhibit D to Return of Writ.* Prior to the start of trial, on September 13, 2004, the following discussion transpired:

> MR. MAROUS: There has been a plea agreement offered.... [W]e would like his acknowledgment on the record that he has been presented with the plea agreement from the government and that he has chosen not to accept that and proceed to

15

> exercise his rights under trial....
>
> ***
>
> MR. HOBSON: Your Honor, the plea offer was that Mr. Robinson would plead guilty to the one charge in the indictment and the government would agree that he would be entitled to a three-point reduction for acceptance of responsibility, and that was essentially the plea agreement that was offered to Mr. Robinson, and he does not wish to accept that agreement.
>
> COURT: Is that a correct statement of the terms of the plea agreement offered?
>
> MR. MAROUS: Essentially, that's the sum and substance of it, yes.
>
> COURT: ... Has your counsel explained this offer of a plea agreement to you?
>
> DEFENDANT ROBINSON: Yes.
>
> COURT: And you have declined it, is that right?
>
> DEFENDANT ROBINSON: Yes.

*Transcript,* September 13, 2004, at 4-5. A discussion regarding the facts that lead up to the search of petitioner then took place.

> COURT: Now, are there any issues about the authority of the officers to search [petitioner] or the propriety of the search? There has not been a motion to suppress.

> MR. HOBSON: There has not been a motion to suppress, Your Honor.
>
> ***
>
> COURT: Well, if there's no issue raised by the defense about the propriety of the search, then I just don't see what the problem is. You are speculating that ... a juror may have... some offense to the fact that he was searched even though no issue is raised about it.
>
> ***
>
> I'm going to wait until I have heard the evidence and decide whether or not I should instruct the jury that they shouldn't be concerned about it, but I'm not even sure that's necessary...
>
> Are there any other issues?
>
> ***
>
> MR. HOBSON: Not at this time, Your Honor.

*Id.*, at 8-9.

Therefore, contrary to petitioner's allegation here, the record reflects that defense counsel discussed sentencing ramifications with petitioner, but that petitioner ultimately refused to accept the guilty plea and decided to proceed to trial, as was his right. When asked, shortly prior to trial, what problems he had with his attorney, petitioner never mentioned a dispute about filing a motion to suppress evidence. Similarly, when the issue was discussed prior to the start of trial, and counsel made clear that the defense would not

17

be challenging the propriety of the search, petitioner said nothing. Any refusal by petitioner to further discuss his case with his attorney prior to trial that may have resulted in his misunderstanding of the consequences of proceeding to trial was not the fault of defense counsel. Counsel's failure to insist that petitioner accept the government's plea offer simply does not constitute constitutionally ineffective assistance. *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003).

Therefore, for all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request for an evidentiary hearing is **DENIED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C.§ 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the

decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                   /s/ Terence P. Kemp
                                                   United States Magistrate Judge